[The Emaus Orphan House *v.* Kendig's Administrator.]

county; and although their decision on a *habeas corpus* is not conclusive, yet a spirit of comity, as well as a conviction of the correctness of the decision, should induce us to leave it undisturbed. We shall make an order as to costs in the present case, except as to the writ and service thereof, which the relator is ordered to pay.

*Brown, for plaintiff.*

*Fisher, for defendant.*

----

*Court of Common Pleas, Dauphin County, May 15th,* 1854.

THE EMAUS ORPHAN HOUSE *v.* KENDIG'S ADMINISTRATOR.

An executor or administrator can pay a debt barred by the statute of limitations, except when forbidden by a devisee or other party in interest.
The retaining by an executor or administrator of a sum of money as security to himself against a claim, does not so far make him a trustee, in respect to the person to whom the claim was due, as to prevent the running of the statute of limitations.

BY THE COURT.—The release given in evidence shows that either Christian Spayd or John Cassell, or both, received the money from the Union Canal Company for the use of the plaintiff. From the statement of Kendig, executor of Spayd, we may fairly infer that he knew the whole fund came into Spayd's hands, and that he was liable to account therefor. The release is not dated, but it was acknowledged May 27th, 1835. On September 3d, 1844, Kendig settled his account before the register, as executor of Christian Spayd, who died between June 30th and September 2d, 1841. The account was finally confirmed December 3d, 1841; and in it the accountant prays credit for the following item: " No. 78; also the unsettled claim of the present trustee of the estate of George Fry, deceased, for the amount which C. Spayd received, as alleged, after his dismissal as trustee of the Union Canal Company for damages done to said estate. $300." This entirely established the fact that Kendig retained in his hands three hundred dollars to cover the claim of the Emaus Orphan House against Spayd's estate, if any should be presented. It by no means establishes the validity of that claim, as is decided in 10 Barr, 240; Rittenhouse *v.* Levering, 6 W. & S. 190. We do not understand that the plaintiff invokes its aid for that purpose, which it says is shown sufficiently by the release; and this entry is used to prove that the whole sum came into the hands of Spayd, to prevent the running of the statute of limitations, and establish the

personal liability of Kendig, by showing that he retained, and still held, the money for plaintiff's use. We think that it proves the first and last positions satisfactorily. The only question in the case worthy of further examination arises under the plea of the statute of limitations, as more than six years had run before the account was stated, and a still greater period between that time and the bringing of this suit. It is very clear, that had any distributee under Spayd's will made any objection, this money could not have been retained to meet plaintiff's debt, which was barred at the time of stating the account; although an executor or administrator may lawfully pay a debt, which he believes to be just, even if barred by the statute, or revive the claim against the estate, when it is already barred. If this claim have legal existence, it must be against the executor personally (Fritz *v.* Thomas, 1 Wh. 66). There can be no pretence that Spayd was a trustee, as he received this money after his removal. No one interested in the estate of Spayd objected, or, as far as we have seen, now objects, to the retention of this money by Kendig, who kept it for the use of the plaintiff, as appears by his statement of record, provided it should appear that the money was due and owing to it. From the moment of such retention the defendant became liable to the plaintiff for this money, in his individual capacity, if the same was due; and the right of action immediately accrued. As the plaintiff could have sustained a civil suit at once on the defendant's receiving the money, the limitation of time began to run at once from that period, and the claim is barred, unless some other matter exists to take the case out of the influence of the statute. It is averred that the defendant holds the money as a trustee for the plaintiff; and even if this is not such a trust as comes within the saving of the act, yet notice must be given to the plaintiff of the receipt of the money for its use, before the time begins to run. This is not that kind of a *direct continuing trust* which comes precisely within the jurisdiction of a Court of Chancery; but is the ordinary case of one man receiving money for another's use, which is cognizable in a court of law. It is that kind of an every-day transaction which occurs constantly in society, and no more comes within the jurisdiction of chancery than any common action of *assumpsit*, or an ordinary case of bailment (7 John. Ch. 110; 1 W. & S. 118; 1 Spin. S. C. Eq. Rep. 375). In reality it is not as strong a case for the plaintiff as that of a person receiving money wrongfully for the use of another, as here the money was received by the deceased without authority, and in apparent hostility to the plaintiff, and was retained by the defendant, not to benefit him, but for his own protection. There is no express trust, but one is raised by implication. Against such a claim the statute always ran (Angell on Limitations, 173). The trust being out of the question, the other point is fairly presented; that the plaintiff had

[Kunkel *v.* Snoddy.—Landis *v.* Snoddy.]

no notice that the defendant had received this money. From aught that appears in the case, the trustees of this institution knew as well the day after the account was confirmed that this money was retained by the defendant, as they did the day before the suit was brought. The release was on record, and showed in June, 1835, that Spayd had the money. The account was filed of record in 1844, and proved that the defendant had retained it. There is no evidence of any fraud or concealment. Nor has the plaintiff showed when or how the fact come to his knowledge. It is entirely unlike the case of an agent or attorney, whose duty it is to notify his principal or client that a debt has been collected. Especial trust and confidence is reposed there; none exists here. No connection is shown between the parties, except that raised by legal implication, which gives an action by one party against another, who has money in his hands which *in equo et bono* should be paid over. We consider this claim barred by the statute of limitations. We therefore enter judgment on the verdict in favor of the defendant.

*McCormick and Brown, for plaintiff.*

*Detwiler and Roberts, for defendant.*